## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**DOUGLAS ERVIN MILLER**,

Debtor.

Case No.  **13-61417-11**

# MEMORANDUM OF DECISION

At Butte in said District this 11ᵗʰ day of June, 2014.

In this Chapter 11 case the Debtor Douglas Ervin Miller ("Miller"), filed on February 3, 2014, a "Motion to Affirm Executory Contracts and Leases and Ownership of Grazing Preference" (Document No. 26) and a motion (Doc. 27) to pay property taxes owed on Assessor's Parcel Number 204-21-029 in Yavapai County, Arizona, which includes property subject to Doc. 26.  Creditor Starcrest, Inc. ("Starcrest"), which owns certain real property which is allegedly subject to Miller's grazing preference, filed an objection based upon issue preclusion and claim preclusion, on the *Rooker-Feldman* doctrine, and accuses Miller of unclean hands and fraud on the court.  A hearing on these contested matters was held at Missoula on April 11, 2014. Miller appeared pro se and testified.  Starcrest was represented by attorneys Ross Richardson of Butte, Montana, and Douglas J. Suits ("Suits") of Suits Law Firm, PLC, Prescott, Arizona.  The following Exhibits ("Ex.") were admitted at the hearing:   Debtor's Ex. 1a, 1b, 1c, 1d, 1e, 1f, 1g,

1

1h, 1i, 1j, 1k,[1] 2a, 2c, 2d, 2e, 2f, 2g, 2h, 2i, 3a, 3b, 3c, 4,[2] and Starcrest's Ex. A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V, W, X, and Y.  Debtor's Ex. 5a, 5b, 5c, 5d, 5e, 5f, 5g, 5h, 5i, and 5j were admitted only as legal argument.  At the conclusion of the parties' cases-in-chief the Court took Debtor's motions under advisement.

After review of the record and applicable law, the Court denies Debtor's motion in part without prejudice on procedural grounds, without deciding the merits, to the extent Debtor requests to determine the validity, priority and extent of his interests in leases and grazing preference located on Starcrest's real property, as that requires an adversary proceeding under Rule 7001(2) rather than a contested matter governed by Rule 9014(a) in which relief may be requested by motion.  The Court grants Debtor's motions to the extent they seek to assume executory contracts, grazing leases and grazing preference, and pay taxes on Debtor's own real property.

This Court has jurisdiction of this case under 28 U.S.C. § 1334(a).  Debtor's motions are core proceedings under 28 U.S.C. § 157(b)(2).  From the evidence and parties' arguments, the Court concludes that Debtor's motions require a determination of the validity or extent of certain leases and federal grazing preferences, which extend onto real property owned by Starcrest.  Rule 7001(2) of the Federal Rules of Bankruptcy Procedure provides that "a proceeding to determine the validity, priority, or extent of a lien *or other interest in property*, . . . " is an adversary proceeding governed by Part VII ("Adversary Proceedings").  To the extent Debtor seeks to

---

[1]  The Court admitted only the buy/sell portion of Ex. 1k, and refused admission Suits' attached letter.

[2]  Ex. 4 was admitted only for the limited purpose to show ownership of water rights in the year 1978, not as proof of who owns them now.

determine the extent of his leases and grazing preference on real property owned by another, his motion is improper procedure and must be denied on procedural grounds.

## BACKGROUND FACTS & PROCEDURAL HISTORY

In June of 1995, Starcrest sold approximately 103 deeded acres (the "Blackrock parcel") in Yavapai County, state and federal grazing leases, and personal property to a nonparty Richard Nelson ("Nelson"). Ex. E. The purchase contract provided that Starcrest would allow the buyer to use and access livestock facilities and waters so long as title remains in the name of Starcrest and or family. Accompanying escrow instructions between those parties provided slightly different terms, i.e., that Nelson could use and access livestock facilities and waters so long as title to the parcel remained in the name of Starcrest, "their heirs, successors or assigns." Nelson accessed Starcrest's lands and waters and livestock facilities with Starcrest's express permission. Ex. E.

In December 1999, Miller acquired the Blackrock parcel from Nelson. Thereafter Miller used Starcrest's lands to access the State and BLM leased lands and water rights, and used Starcrest property to perform maintenance on wells and storage tanks. Under cross examination, Miller admitted that he moved a mobile trailer onto Starcrest's "Headquarters" parcel, and in addition has a backhoe and pickup truck on Starcrest's property, and some tractor trailers. Miller has a bulldozer, but he testified that it sits on state land.

Miller filed a chapter 11 petition on March 19, 2001, Case No. 01-30752-11. He filed a chapter 11 plan and disclosure statement on December 7, 2001. His disclosure statement was

approved, and after a hearing on March 27, 2002, the Court confirmed Miller's chapter 11 plan.[3]
He testified that he completed payments required under the plan, and a final decree was entered
and the case closed on November 6, 2007.

Starcrest filed a complaint against Miller to quiet title and for declaratory relief in
Arizona Superior Court, Case No. P1300CV20080464.  Starcrest sought a declaration that Miller
was entitled only to permissive use of its real property limited to use of and access to livestock
facilities only so long as title remains in the name of Starcrest and or family.  Miller filed an
answer and counterclaim seeking specific performance and the right to access and use Starcrest's
property, livestock facilities and water on its property, based upon the language of escrow
instructions.

The parties filed motions for summary judgment.  The state superior court granted
Starcrest's motion for summary judgment and denied Miller's motion, and awarded Starcrest
attorneys' fees.  Judgment was entered on December 7, 2010, quieting title in favor of Starcrest
and awarding it fees and costs.  Ex. B.  The court denied Miller's motion for a new trial.

Miller appealed.  The Arizona Court of Appeals affirmed by memorandum decision,
except that it modified the trial court's ruling to provide that Miller's use of Starcrest's property
ceases upon the sale of the property to a buyer other than a family member.  Ex. E, p. 13.  The
court agreed with the superior court that the purchase contract controls over the escrow

_____

[3]The case docket in No. 01-30752-11 includes scanned documents beginning on August
23, 2002, with Document No. 318.  All documents filed prior to August 23, 2002, including
Miller's plan and disclosure statement, are not scanned.  In order to determine whether Miller
assumed the grazing leases and grazing preferences, and whether he provided for treatment of
Starcrest in any fashion, the plan and disclosure statement will have to be retrieved from
archives.

4

instructions.  Miller sought post-appeal relief but that relief was denied.

Miller continued to use Starcrest's Headquarters parcel, and stored personal property and equipment.  On January 11, 2012, Starcrest's attorney Suits sent Miller a letter demanding that Miller cease his use of Starcrest's livestock facilities, waters, and Headquarters parcel to store Miller's personal possessions.  Ex. D.

Miller sought post-judgment relief and was denied.  On September 25, 2013, the superior court entered an amended final judgment after appeal.  Ex. L.  Starcrest was awarded judgment quieting title to its Headquarters property, and Miller was entitled to permissive use of Starcrest's lands for the limited purpose of accessing livestock facilities and waters so long as title of that parcel remains in the name of Starcrest or family.  Ex. L.

Suits sent Miller a letter dated September 25, 2013, demanding that Miller cease and desist unauthorized use of Starcrest's Headquarters parcel to store his personal property or allow his agents to reside on Starcrest's property.  Ex. N.  Suits gave Miller 30 days to cease his unauthorized use of Starcrest's private property or Suits would seek a show cause hearing in the superior court.

At the end of the 30 days Miller filed his Chapter 11 petition commencing the instant case on October 24, 2013.  He filed his Schedules and Statement of Financial Affairs on the same date and filed amendments.  His Schedule G lists the BLM Grazing Lease 06222 and an Arizona State Grazing Lease 05-1618.  Schedule A lists his 103 acres in Yavapai County designated "204-21-029" valued at $35,000.00, and "Range Improvements in Leases 06222 and 05-1618 valued at $800,000.00.  Schedule F lists Starcrest's judgment as contingent and disputed in the amount of $62,954.04.

5

Debtor filed his motion to affirm executory contracts, leases and ownership of grazing preference on February 3, 2014, with his motion to pay property taxes. The motion to pay property taxes lists the parcel 204-21-029, for which Debtor moves for authority to pay taxes in the amount of $4,335.93 if paid in February to bring them current.

Miller's motion to affirm executory contracts and leases and ownership of grazing preference seeks this Court to reaffirm and uphold Miller's confirmed chapter 11 Plan from Case No. 01-37752-11, and the BLM and Arizona grazing leases, plus the grazing preference for 209 head of cattle. At the hearing Miller clarified that he is entitled to the full grazing rights of 209 head on Starcrest's Headquarters parcel. He argued that the Arizona state courts had no jurisdiction or authority to destroy or reduce his grazing preference, and that federal law precludes the state court from amending his 209-head grazing preference by limiting his use of Starcrest's Headquarters parcel. Miller asserted that he would lose his grazing preference if his 209-head preference is reduced, and would not be able to get it back.

Starcrest filed objections to Debtor's motion to affirm executory contracts, grazing leases and ownership of preferences. Starcrest objected that this court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine, and the motion is barred by issue preclusion and claim preclusion, and accuses Miller of unclean hands and fraud on the court by trying to revisit the Arizona state court decisions.

### DISCUSSION

At the hearing Miller stated that Debtor's motion to pay taxes is related to the same property which is the subject of his motion to affirm executory contracts, grazing leases and grazing preference. The Court does not read Debtor's motion to pay taxes as relating to

6

Starcrest's Headquarters parcel.  Debtor's motion to pay property taxes specifies that it relates to Parcel Number 204-21-029 in Yavapai County, which is the same parcel number listed in Debtor's Schedule A.  Starcrest's objection does not appear to address Debtor's motion to pay property taxes on his own 103 acres.  The Court sees no outstanding objection, and sees no reason to delay authorizing the Debtor to pay his property taxes and bring them current.  Debtor's motion to pay property taxes on his own real property will be granted.

Debtor's motion to assume executory contracts, grazing leases and grazing preference extends to property other than Debtor's 103 acres.  The evidence at the hearing showed that the leases and preference extended not only to Starcrest's Headquarters parcel, but also to state and federal lands and other private lands.  Starcrest objects to Debtor's motion, but it appears to this Court that Starcrest's objection extends only to the extent that Debtor seeks to preserve his grazing preference and grazing leases on Starcrest's Headquarters parcel.  No other objections were filed, and so to the extent of Debtor's own property and property not including Starcrest's Headquarters parcel, the Court will grant Debtor's motion to assume executory contracts, grazing leases and grazing preference.

However, with respect to Starcrest's Headquarters parcel, this Court will not decide the merits of Debtor's motion to assume executory contract, grazing leases and grazing preference because he has not followed proper procedure.  This Court is aware that it must construe this pro se Debtor's motion liberally, but in the Ninth Circuit pro se litigants are not excused from compliance with the rules.  *Warrick v. Birdsell*, 278 B.R. 182, 187 (9th Cir. BAP 2002); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants.").

7

Rule 7001(2) provides that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property," is to be determined by adversary proceeding.  A court is not authorized to enter orders that determine interests in property in a contested matter instead of an adversary proceeding.  *Johnson v. TRE Holdings, LLC (In re Johnson)*, 346 B.R. 190, 195 (9th Cir. BAP 2006).  It is settled law in this circuit that it is error for a bankruptcy court to determine property interests outside of an adversary proceeding. *See, e.g., Brady v. Commercial W. Fin. Corp. ( In re Commercial W. Fin. Corp.)*, 761 F.2d 1329, 1336–38 (9th Cir.1985) (reversing order confirming chapter 11 plan because plan proponent attempted to invalidate liens through plan confirmation process, rather than by filing required adversary proceeding); *see Brady v. Commercial W. Fin. Corp. (In re Commercial W. Fin. Corp.)*, 761 F.2d 1337, 1339 (9th Cir.1985) (reversing order confirming chapter 11 plan because plan proponent attempted to invalidate liens through plan confirmation process, rather than by filing required adversary proceeding); *see also In re Cogliano*, 355 B.R. 792, 805 (9th Cir. BAP 2006) (holding that bankruptcy court lacked authority to determine whether estate had interest in property as part of contested matter concerning debtor's exemption claim).

Starcrest objects to Debtor's motion on the grounds it is barred by the *Rooker-Feldman* doctrine,[4] in addition to other legal arguments.  In light of improper procedure followed by Debtor's motion to assume grazing leases and grazing preferences, this Court does not reach or

_____

[4]The *Rooker-Feldman* doctrine takes its name from two Supreme Court cases:  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010).  It stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court judgments.  *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003).

decide the merits of the parties' arguments until they are presented to the Court following proper procedure.

The Court notes that Debtor argues that the order entered in his previous chapter 11 case, No. 01-30752-11, has preclusive effect against the creditor's attempt to relitigate the extent of the grazing preference. Miller did not offer the confirmed plan from Case No. 01-30752-11 for admission. It is not in evidence, and the Court cannot review that plan on the Court's ECF system.

Once a bankruptcy plan is confirmed and becomes final, the terms of the plan have the same effect as a final judgment and bind any creditor, and any questions that could have been raised pertaining to the plan are entitled to *res judicata* effect. 11 U.S.C. § 1141(a); *In re J.J. Re-Bar Corp, Inc.*, 420 B.R. 496, 502 (9th Cir. BAP 2009), *aff'd.*, 644 F.3d 952 (9th Cir. 2011); *Espinosa v. United Student Aid Funds*, 553 F.3d 1193, 1199 (9th Cir.2008), *aff'd.*, 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010); *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995). However, in order for a plan term to be preclusive, it must be clear and its proposed effect on the creditor must be explicit. *In re Gonzales*, __ B.R. __, 2014 WL 1509293, *6 (Bankr. C.D. Cal. 2014), citing *J.J. Re-Bar Corp, Inc.*, 420 B.R. at 503. Since Miller did not offer the confirmed plan from Case No. 01-30752-11 at the hearing, this Court cannot determine whether it has preclusive effect against Starcrest.

In sum, with respect to Starcrest's Headquarters parcel this Court denies Debtor's motions as improper procedure, with leave to initiate an adversary proceeding under Rule 7001(2). The Court will grant Debtor's motion to pay property taxes, and will grant Debtor's motion to affirm executory contracts, grazing leases and grazing preference in part, with respect

9

to Debtor's own real property and property other than Starcrest's property.

**IT IS ORDERED** a separate Order shall be entered in accordance with the above denying Debtor's motion to affirm executory contracts, grazing leases and grazing preference filed on February 3, 2014 (Docket No. 26) in part with respect to real property owned by Starcrest based upon improper procedure, with leave to initiate an adversary proceeding under Rule 7001(2), but otherwise granting Debtor's motion in part with respect to his own real property and property not including Starcrest's property; and granting Debtor's motion to pay property taxes owed on Debtor's own real property in Yavapai County, Arizona.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana